# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INFINITY REAL ESTATE, LLC,** *et al.*, <br> **Plaintiffs,** <br><br> v. <br><br> **TRAVELERS EXCESS AND SURPLUS LINES COMPANY,** <br><br> **Defendant.** | **CIVIL ACTION NO. 20-6398** |

## MEMORANDUM OPINION

Rufe, J.                                                                                                September 13, 2021

Plaintiff Infinity Real Estate has brought this action alleging that it was wrongfully denied insurance coverage for COVID-19 related losses. Defendant Travelers Excess and Surplus Lines Company has moved to dismiss. For the reasons stated below, Defendant's motion will be granted.

## I.    BACKGROUND[1]

Plaintiff, through a number of limited liability corporations, owns commercial and residential real property in five states and Washington, D.C.[2] Defendant provides Plaintiff with a commercial property insurance policy covering loss of business income and/or rental value. Under this policy, Plaintiff is entitled to compensation for: 1) the loss of business income and rental value caused by the "physical loss of or damage to" the insured property; 2) the loss of business income and rental value as a result of civil authority actions preventing the use of the

---

[1] The factual allegations in Plaintiff's Complaint [Doc. No. 1] are assumed true for the purposes of this motion to dismiss.

[2] Plaintiff, through its affiliates, owns property in Pennsylvania, New York, Connecticut, Arkansas, Massachusetts, and Washington, D.C.

building; 3) the loss of of business income and rental value caused by the loss of use of a dependent property; and 4) the loss of business income and rental value caused by the prevention of ingress to or egress from the insured property.[3] The policy also contains a virus or bacteria exclusion barring coverage for "loss or damage caused directly or indirectly" by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."[4]

Beginning in March 2020, Plaintiff alleges that its properties were affected by federal, state, and/or local government COVID-19 orders mandating the closure of non-essential businesses. Plaintiff asserts that it lost the use of its properties, that its commercial tenants halted operations, and that it suffered a decrease in rent payments. Plaintiff sought insurance coverage from Defendant for these losses, and within 15 days of receiving the claim, Defendant denied coverage without investigation.[5]

Plaintiff brought this action for breach of contract and for statutory bad faith under Pennsylvania law alleging that Defendant wrongfully denied coverage under the policy.[6] Defendant moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure

---

[3] *See* Policy [Doc. No. 1-4] at 31–34.

[4] *Id.* at 23, 25.

[5] *See* Compl. [Doc. No. 1] at ¶¶ 2,3.

[6] Plaintiff asserts that there is diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff Infinity Real Estate is a Delaware limited liability company headquartered in New York, and Plaintiff's affiliates are incorporated in Arkansas, Delaware, Washington D.C., New York, and Massachusetts. *See id.* at ¶14; Ex. A to Compl. [Doc. No. 1-3] (listing affiliate states of incorporation). Defendant Travelers Excess and Surplus is a Connecticut corporation with its principal place of business in Connecticut, and the amount of controversy is in excess of $75,000. *See* Compl. [Doc. No. 1] at ¶¶ 11, 14.

12(b)(6). Defendant argues that Plaintiff is not entitled to coverage under language of the policy and that Plaintiff's claims for losses are barred by a valid policy exclusion.[7]

## II. LEGAL STANDARD

A complaint must contain sufficient factual matter to state a claim to a relief that is plausible on its face to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[8] The question is not whether the plaintiff will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold."[9] The court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to the relief."[10] However, the Court "need not accept as true unsupported conclusions and unwarranted inferences"[11] or "legal conclusions."[12]

## III. CHOICE OF LAW

"[A] federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits."[13] "Pennsylvania applies the more flexible, 'interest/contacts' methodology to contract choice-of-law questions"[14] This is a two-step process where the court "must first

---

[7] Mot. to Dismiss [Doc. No. 12-1] at 4–14.

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

[10] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[11] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)) (internal quotations omitted).

[12] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

[13] *Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 343 (3d Cir. 2000).

[14] *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226–27 (3d Cir. 2007).

determine whether there is an 'actual' conflict between" the substantive law of the jurisdictions whose law may apply.[15] If there is an actual conflict, the court then considers the contacts and interests at stake.[16]

Plaintiff Infinity Real Estate LLC and their insurance broker are headquartered in the state of New York, and the majority of the insured properties are located in the state of New York.[17] Thus, New York could have a sufficient interest in having its law apply in this matter. However, the laws of New York and Pennsylvania generally do not conflict on issues "regarding the interpretation of insurance policies."[18] There is not an actual conflict of law and the Court will apply Pennsylvania law.[19]

IV. DISCUSSION

Under Pennsylvania law, the interpretation of an insurance policy requires the Court to read the policy as a whole and construe its meaning according to its plain language,[20] while considering the "reasonable expectations" of the insured.[21] The court must construe ambiguous policy language in favor of the insureds, but the policy language cannot be stretched beyond its

---

[15] *Howden N. Am. Inc. v. Ace Prop. & Cas. Ins. Co.*, 875 F. Supp. 2d 478, 495 (W.D. Pa. 2012).

[16] *Id*.

For breach of contract claims, interest/contact balancing considers "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Hammersmith*, 480 F.3d at 233 (3d Cir. 2007).

[17] *See* Policy [Doc. No. 1-4] at 2; Ex. C to Compl. [Doc. No. 1-5] (listing insured properties).

[18] *Wenkosky v. Protective Ins. Co.*, 698 F. Supp. 1227, 1230 n.2 (M.D. Pa. 1988).

[19] The parties have also acknowledged the application of Pennsylvania law and argued under it. *See, e.g.,* Mot. to Dismiss [Doc. No. 12-1] at 3–4; Pl.'s Resp. in Opp'n [Doc. No. 15] at 25.

[20] *Spector v. Fireman's Fund Ins. Co.*, 451 F. Appx. 130, 136 (3d Cir. 2011).

[21] *Medical Protective Co. v. Watkins*, 198 F.3d 100, 106 (3d Cir. 1999) (citations and quotations omitted).

plain language meaning to create ambiguity.[22] Moreover, a disagreement between parties over the policy language is not sufficient to constitute an ambiguity.[23] The insured bears the initial burden of establishing coverage under the policy.[24]

### A. Plaintiffs cannot Show that They Are Entitled to Coverage under the Policy

#### 1. The Business Income and/or Rental Value Provision and the Civil Authority Provision

Plaintiff argues that it is entitled to coverage under the Business Income/Rental Value provision and the Civil Authority provision. Although these provisions provide different types of coverage, both require the "direct physical loss of or damage to" a property.[25] Plaintiff provides

---

[22] *RDS Vending LLC v. Union Ins. Co.*, No. 20-3928, 2021 WL 1923024, at *3 (E.D. Pa. May 13, 2021).

[23] *Id.*

[24] *State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009)

[25] The Business Income/Rental Value provision states:

> [T]he Company will pay for the actual loss of Business Income and/or Rental Value sustained by the Insured due to the necessary 'suspension' of the Insured's 'operations' during the period of restoration. The 'suspension' must be caused by direct physical loss of or damage to property at the Insured's premises where coverage applies . . .

Policy [Doc. No. 1-4] at 31.

The Civil Authority provision states:

> The insurance provided by this coverage form for loss of Business Income and/or loss of Rental Value is extended to apply to such loss of Business Income and/or loss of Rental Value incurred by the Insured caused by the action of civil authority that prohibits access to the Insured's premises where such coverages apply:
>
> 1) Due to direct physical loss of or damage to property other than property at the Insured's premises, caused by or resulting from a Covered Cause of Loss, provided both of the following apply:
>
>    a. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the Insured's premises are within that area but are not more than 10 miles from the damaged property; and
>
>    b. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damages, or the action is taken to enable a civil authority to have unimpeded access to damaged property.

*Id.* at 32.

a two-step argument as to why the "direct physical loss of" requirement is met. First, Plaintiff argues that the Court should interpret "direct physical loss of" broadly to include any "scenario where business owners and their employees, customers, vendors, suppliers, and others lose the full range of rights and advantages of using or accessing their business property."[26] Second, Plaintiff argues that governmental closure orders are a "direct physical loss" under this broad interpretation.

To determine whether governmental closure orders can cause a "direct physical loss," the Court must look to the policy as a whole. The Business Income/Rental Value provision provides coverage for loss of income or rental value, but limits the coverage to the "period of restoration," which begins with "the date and time of direct physical loss or damage to property . . . and ends on the . . . date when the property should be repaired, rebuilt or replaced; or the date when business is resumed at a new permanent location."[27]

By limiting coverage to the "period of restoration," it is clear that the parties intended the "direct physical loss of" a property to only include a loss of use "directly associated with the building such that it could be remedied through repair or by moving to a different building."[28]

---

[26] Pl.'s Resp. in Opp'n [Doc. No. 15] at 5–6 (quoting *North State Deli, LLC, v. Cincinnati Ins. Co.*, No. 20-2569, 2020 WL 6281507, *3 (N.C. Sup. Ct. Oct. 7, 2020)). Plaintiff argues that this is the proper interpretation based on the dictionary definitions of the words comprising the phrase.

[27] Policy [Doc. No. 1-4] at 78.

[28] *RDS Vending LLC v. Union Ins. Co.*, No. 20-3928, 2021 WL 1923024, at *4 (E.D. Pa. May 13, 2021); *see also Star Buick GMC v. Sentry Ins. Grp.*, No. 20-03023, 2021 WL 2134289, at *5 (E.D. Pa. May 26, 2021); *J.B.'s Variety Inc. v. Axis Ins. Co.*, No. 20-4571, 2021 WL 1174917, *4 (E.D. Pa. Mar. 29, 2021) ("The Policy makes clear that there must be some sort of physical damage to the property that is the subject of a repair, rebuilding, or replacing."); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021).

The Policy also includes a special exclusion provision which states that Defendant will not pay for "any increase of loss caused by or resulting from delay in rebuilding, repairing, or replacing the property resuming 'operations' due to interference at the location of the rebuilding, repair or replacement by strikers or other persons…" Policy [Doc. No. 1-4] at 47. This special exclusion provision further supports the Court's interpretation of the phrase.

Here, Plaintiff has alleged that the governmental closure orders caused a loss within the meaning of the policy. However, no allegation is made that the orders were associated with a specific property or that any loss caused by the orders could be remedied by repair or relocation. Therefore, Plaintiff has not alleged a "direct physical loss of" a property as required by the policy.[29]

Plaintiff also suggests that SARS-CoV-2, the coronavirus which causes COVID-19 is a physical substance that can live and be active on inert surfaces within a property and therefore cause a "direct physical loss."[30] But as Plaintiff makes clear in the Complaint, the loss of use of the properties was because "COVID-19 was omnipresent . . . throughout communities across the United States."[31] Furthermore, if the loss had been caused by coronavirus on inert surfaces, it could be remedied through disinfecting the interior of the property.

### 2. The Ingress or Egress Provision

Plaintiff argues that it is entitled to coverage under the Ingress or Egress provision, which provides coverage for loss of business income/rental value where ingress to or egress from the covered property is prevented "as a direct result of" a loss or damage to a nearby property.[32]

---

[29] While the Civil Authority Provision does not refer to a period of restoration, there is nothing in the policy to suggest that ""direct physical loss" should be interpreted differently in different provisions. *See, e.g., Two Farms Inc. v. Greenwich Ins. Co.*, 628 Fed. Appx. 802, 805 (2d Cir. 2015) (citations and quotations omitted) ("Generally, a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons.").

[30] *See* Pl.'s Resp. in Opp'n [Doc. No. 15] at 9.

[31] Compl. [Doc. No. 1] ¶ 111.

[32] The Ingress or Egress provisions states:

> The insurance provided by this coverage form for loss of Business Income and/or loss of Rental Value is extended to apply to such loss of Business Income and/or loss of Rental Value incurred by the Insured when ingress to or egress from the Insured's premises where such coverages apply is prevented (other than as provided in the Civil Authority Coverage Extension) as a direct result of loss of or damage to property that is away from, but within 1 mile (or the revised number of

Unlike the provisions discussed above, the Ingress or Egress provision requires "loss of" a property, and not a "direct physical loss of." But the Court need not determine the precise meaning of "loss" under this provision because Plaintiff cannot show ingress or egress was prohibited as "direct result of" another property.

Looking to the plain meaning of the language, the "direct result of" requirement means that there must be causal relationship between the loss suffered by the nearby property and the prevention of ingress or egress. Plaintiff's allegations that COVID-19 was omnipresent are insufficient to meet this requirement as the Governmental Orders—which Plaintiff alleges prevented ingress and egress—were issued in response to the overall prevalence of COVID-19 in the community and not within a specific property.[33]

### B. Plaintiffs' Insurance Claims are Barred by the Virus Exclusions

Even if Plaintiff could establish a right to coverage under the policy, coverage would be barred under the Virus or Bacteria exclusion. Under Pennsylvania law, the insurer bears the burden of showing that an exclusion applies.[34] Exclusions are strictly construed against the insurer,[35] but "[e]xclusions from coverage contained in an insurance policy will be effective

---

miles shown for this Coverage Extension in the Supplemental Coverage Declarations) of the Insured's premises, caused by or resulting from a Covered Cause of Loss.

Policy [Doc. No. 1-4] at 32–33.

[33] Plaintiff also claims entitlement to coverage under the "Dependent Property" provision. The "Dependent Property" provision looks to the Business Income Coverage, Civil Authority, and Ingress or Egress provisions and replaces "at the Insured's premises" with "the premises of a 'dependent property.'" Policy [Doc. No. 1-4] at 33–34. For the same reasons Plaintiff cannot establish coverage under the provisions for the covered properties, Plaintiff cannot do so for any "dependent property."

[34] *See State Farm Fire & Cas. Co.*, 589 F.3d at 111; *Wolfe v. Ross*, 115 A.3d 880, 884 (Pa. Super. Ct. 2015).

[35] *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).

against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import."[36]

The Virus or Bacteria exclusion states that Defendant will not "pay for loss or damage caused directly or indirectly" by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."[37] SAR-CoV-2 is a virus that induces COVID-19, and it is the direct or indirect cause of Plaintiff's alleged losses. The virus or bacteria exclusion unambiguously bars coverage for Plaintiff's claims.[38]

Plaintiff argues that the exclusion should not apply because "the Governmental Closure Orders enacted by controlling authorities through the United States, not the virus itself, were the cause for the losses."[39] But the exclusion explicitly applies to loss or damage caused "indirectly" by a virus or bacteria and states that it will apply "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."[40] Plaintiff further argues that the exclusion should not apply because Defendant chose not to incorporate a specific pandemic exclusion that had been created by the insurance industry.[41] But because the language of the

---

[36] *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 761 (3d Cir. 1985).

[37] Policy [Doc. No. 1-4] at 23, 25.

[38] Other courts considering a similar exclusion in COVID-19 insurance cases have reached this same conclusion. *See, e.g., Lansdale 329 Prop.*, 2021 WL 1667424, at *10 (collecting cases) ("These cases have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage").

[39] Pl.'s Resp. in Opp'n [Doc. No. 15] at 2.

[40] Policy [Doc. No. 1-4] at 23.

Plaintiff cites *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Company*, 20-cv-265, 2020 WL 7249624, at *12 (E.D. Va. Dec. 9, 2020), for the proposition that, for the exclusion to apply, there must be a "direct connection" between the virus and the claimed loss and that the connection must be the "immediate cause" in the chain. Doc. No. 15 at 20–23 (citing). But the exclusion in *Elegant Massage* was only covered losses that were the result of "growth, proliferation, spread or presence" of a virus and did not specify that it covered losses indirectly caused by a virus. *Elegant Massage*, 2020 WL 7249624, at *12.

[41] *See* Compl. [Doc. No. 1] ¶¶ 114–16.

virus or bacteria exclusion is unambiguous, the Court need not consider any extra-contractual material to determine the parties' intent.

Finally, Plaintiff argues that the virus or bacteria exclusion should not apply because its application "is contrary to the reasonable expectation of the Insureds."[42] Under Pennsylvania law, the Court must examine the "totality of the insurance transaction to ascertain the reasonable expectation of the insured," and "the language of the insurance contract itself serves as the best evidence of the parties' reasonable expectations.[43] To show a reasonable expectation contrary to the language of the policy, the insured must allege facts showing reliance on a representation made by the insurance company not accurately reflected in the policy or the insurer unilaterally changed the scope of the coverage after the policy was purchased.[44] There are no such allegations here, and Plaintiff therefore cannot show a reasonable expectation of coverage.[45]

---

[42] Compl. [Doc. No. 1] at ¶123.

[43] *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 502, 507 (E.D. Pa. 2021).

[44] *See Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353–54 (Pa. 1978); Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920, 925 (Pa. 1987).

[45] *See Fuel Recharge Yourself, Inc. v. Amco Ins. Co.*, No. 20-4477, 2021 WL 510170, at *5 (E.D. Pa. Feb. 11, 2021) (citations and quotations omitted) ("Because I have concluded that the policy provisions at issue unambiguously preclude coverage, I cannot find that Plaintiff's reasonable expectations were frustrated.").

Plaintiff brings a claim for statutory bad faith under 42 Pa. C.S.A. § 8371. *See* Compl. [Doc. No. 1] at ¶ 142. But because Defendant had a reasonable basis for denying Plaintiff's claims, the denial could not have been in bad faith. *See Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 373 (Pa. 2017) (citations and quotations omitted) (Finding bad faith requires that the insurer "did not have a reasonable basis for denying benefits under the policy."). Plaintiff has also agreed to withdraw its claim for breach of the implied covenant of good faith and fair dealing. *See* Pl.'s Resp. in Opp'n [Doc. No. 15] at 31.

Plaintiff requests that, "[i]n the event that this Court is inclined to grant Defendant's Motion to Dismiss," the Court should instead stay this action pending the Third Circuit's consideration of *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.* on appeal. *See* Pl.'s Resp. in Opp'n [Doc. No. 15] at 33. Although many COVID-19 business interruption cases examine similar policy language, each case is governed by its own specific facts and policy. The Court will not stay this action.

V. CONCLUSION

The Court is sympathetic to Plaintiff and other similarly situated property owners affected by the COVID-19 Pandemic. But the Court must reach the result consistent with the language of the policy and the applicable jurisprudence. Plaintiff cannot show that it was entitled to coverage for COVID-19 related losses and Plaintiff's Complaint will be dismissed with prejudice, as any amendment would be futile.[46] An order will be entered.

---

[46] *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).